### *EX PARTE* WORLEY.

1. FINDING OF FACT by Circuit Judge, that deceased owed no debts, reversed.
2. HOMESTEAD—ADMINISTRATION.—The right of homestead is not to be determined by the amount of indebtedness left by the deceased. Are the costs of administration such debts as will entitle widow to homestead?
3. IBID.—ADMINISTRATOR.—An administrator cannot defeat the vested right of homestead in the widow by paying the debts of the deceased. Will debt due widow be sufficient to give her homestead?
4. IBID.—CLERK OF COURT.—The clerk of the Court of Common Pleas cannot determine the question of *right* to homestead, but that question should be determined by the Court upon exceptions to the return of the commissioners.
5. IBID.—The question of the *right* of homestead may be determined upon exceptions to return of commissioners filed in obedience to writ of clerk upon petition of widow, although that question has been raised in partition proceedings then pending.
6. A PARTITION SUIT brought within twelve months after death of intestate is *premature.*
7. PARTITION—THE ADMINISTRATOR is a necessary party to a suit for partition.
8. HOMESTEAD—WIDOW AND CHILDREN.—When a husband dies, leaving a widow and children, the homestead should be assigned to them jointly.

Before ALDRICH, J., Horry, October, 1896. Reversed.

Petition of Emaline Worley to clerk of court, to have homestead assigned to her out of the estate of her husband, Coleman Worley. To the return of the commissioners, assigning her 900 acres of land and $500, mostly of funds in hands of administrator, Jackson Worley, son and administrator, and Rey Worley, son, except as follows:

1st. Because said clerk erred in granting the prayer of said Emaline Worley's petition, and appointing homestead commissioners, after due notice of the pendency of above described action had been filed in the office, and case placed upon the dockets of said Court, and the issue between the parties made up. 2d. For that the said return is irregular, null, and void, in that it fails to describe the premises awarded as homestead by metes and bounds, as required by statute. 3d. For that said clerk was without jurisdiction in the premises, after the parties in interest had submitted the controversy to Court of Common Pleas. 4th. For that the said return is irregular, null, and void, in that it attempts to assign to homestead claimant personal property exemption out of funds in hands of the administrator of Coleman Worley, whereas the said funds are held by said administrator for the benefit of all creditors of the said Coleman Worley, if any, and, if not, for the benefit of the heirs at law of said Worley, and are not liable to the claimant's claim of homestead, even if it be otherwise well founded. 5th. For that said return is irregular, null, and void, in that it attempts to assign homestead to said Emaline Worley alone, which, if otherwise legal, should have been for the benefit of this respondent, as part of the family of said Coleman Worley, as well as for the benefit of the said Emaline. 6th. For that the demandant has no right to homestead out of the estate of said Coleman Worley, as his widow, unless it appears that there are executions against the deceased's estate, or creditors holding claims against the estate; that where there are no debts due and owing by the estate, as in this case, one tenant in common of property cannot assert and maintain a claim of homestead and defeat other coten-

ants' right of partition; and said return is irregular, null, and void, in that it attempts to disturb the vested rights of this respondent in the land and property described in the return, without due process of law.   7th.  That the statute under which said proceeding was instituted and said return made, is inapplicable to this case, and thereby said return is null and void.   Wherefore, the respondent, under the provisions of the statute law of South Carolina, files the foregoing exceptions to the aforesaid return, and demands that it be set aside and annulled, and that said Emaline Worley is not entitled to homestead.

Following is the Circuit decree:

This proceeding comes before this Court upon exceptions taken to the return of appraisers, appointed to appraise and set off to petitioner a homestead in the real and personal estate of Coleman Worley, intestate.   Coleman Worley died intestate on or about April 18th, 1895, in this county, and left surviving him, as his heirs at law and distributees, Emaline Worley, his widow, petitioner above named, and his two sons, Rey Worley and Jackson Worley.   Both of the sons were of age at the time of the death of intestate. Prior to and at the time of intestate's death, the said Jackson Worley, who was a single man, lived with his father, and as a member of his family.   He still lives with petitioner, his step-mother, in the residence of intestate.   On January 17th, 1896, Rey Worley was duly appointed the administrator of the estate of intestate, and entered upon the duties of his said office.   The personal estate amounted to a considerable sum, and consisted of chattels, such as are used by a successful farmer, and also of a number of notes, mortgages, &c.   Intestate lent considerable sums of money to various parties.   The administrator testified, and without contradiction, that intestate owed no debts, except one for $11, claimed by his widow as due to her, and one to a lady for $65.   The demand of the widow has never been presented to him, or payment demanded, and the $65 due to

the lady he paid last March. Outside of these two claims, no demands, except the expenses of the last sickness and funeral of intestate, which have been paid, have been even heard of by the administrator. In February, 1896, Jackson Worley instituted an action for the partition of all the lands of intestate, and made petitioner, Emaline Worley, and Rey Worley defendants thereto. Emaline Worley answered said complaint, denying the right of plaintiff to partition, and demanded, *inter alia*, that her homestead, as the widow of intestate, be assigned and set off to her. The said plaintiff in said partition action replied to the answer of Emaline Worley, denied her right to homestead, and alleged that if homestead should be assigned, it should be for his benefit as well as hers. On or about February 1st, 1896, the administrator, in pursuance of a proper order duly obtained, sold the personal estate of his intestate for a considerable sum of money. At said sale Mrs. Emaline Worley, petitioner, purchased articles to the value of $30.55, and has never paid for the same. On March 12th, 1896, Mrs. Emaline Worley, petitioner, filed a petition with the clerk of this Court, praying that he proceed to have a homestead, in her favor, assigned and set off to her in the lands and personalty of Coleman Worley, intestate.

It is well to note, in passing, that said petition alleges: "That Rey Worley, claiming to act as administrator of the personal estate, has taken possession of, and partly or wholly disposed of, the personalty of said estate, retaining the proceeds thereof." There is not even a reference, much less an allegation, which would cause one to suppose that the estate was in debt in any amount. On June 19th, 1896, the appraisers filed their return to the writ or process of the clerk, wherein they set off to petitioner a homestead in the land, and her "exemption" or homestead in the personalty. The homestead in the land consisted of "900 acres, more or less," valued at "$1,000." The "exemption," or homestead in the personal estate set off, consisted of "$30.55," the amount due to the administrator by petitioner for the

articles she had purchased at the administeator's sale; "and the sum of $469.45 of the amount now in the hands of the administrator, to be paid to her in cash, making the total amount * * * $500, in addition to the homestead in the real estate." On July 17th, 1896, Jackson Worley filed his exceptions to said return. The first exception was waived at the hearing, abandoned, and the second, based on alleged irregularities, technical, I will pass over, as I prefer to dispose of the matter upon its merits.

The third, fifth, and sixth exceptions may be considered together. The third denies the right of petitioner to homestead in funds held by him as administrator. Fifth exception: "For that the demandant has no right to homestead out of the estate of said Coleman Worley, as his widow, unless it appears that there is an execution against the deceased's estate, or creditors holding claims against the estate; that there are no debts due and owing by the estate; and in this case one tenant in common of property cannot assert and maintain a claim of homestead and defeat other cotenants' right of partition; and said return is irregular, null, and void, in that it attempts to disturb the vested rights of this respondent in the land and property described in the return without due process of law." Sixth exception: "That the statute under which said proceeding was instituted and said return made is inapplicable to this case, and thereby said return is null and void." The proceedings herein were instituted under sec. 2134, Rev. Stat. of 1893, which provide that "Whenever the head of any family, * * * widow or childen, shall be entitled to an estate or right of homestead, as hereinbefore provided, and no process has been lodged with any officer against such homestead," such party or parties may apply to the clerk of the court, where there is no master for the county, "to have the same (the homestead) appraised and set off." Sec. 2126 provides that "a homestead in lands," "not to exceed in value $1,000, with the yearly products thereof, shall be exempt to the head of every family residing in this State from attachment,

levy or sale on any mesne or final process issued from any court upon any judgment obtained upon any right of action arising subsequent to the ratification of the Constitution of the State of South Carolina." This section is in accord with the Constitution of 1868, art. 2, sec. 32, as amended. Sec. 2131 provides that "the personal property of the head of any family residing in this State, whether entitled to a homestead exemption in lands or not, to the extent of $500, shall be exempt from attachment, levy or sale." These are the provisions of law referred to in sec. 2134 by the words, "as hereinbefore provided," and must, with other provisions of law, determine this widow's right to homestead. It is admitted that a widow, in a proper case, though she have no children, is entitled to homestead in her deceased husband's estate. I think that the answer to the question, against whom can a widow claim a homestead? will decide the more material issue in this proceeding. Under the old law, creditors of the deceased husband, and creditors alone, could procure an "attachment, levy or sale" on "mesne or final process, issued from any Court," upon a "judgment obtained," as provided in sec. 2126. And creditors, and no one else, have the right to an "attachment, levy or sale" of the personal property of the head of a family or of his estate, who was indebted to them, as provided in sec. 2131. It follows, therefore, that a homestead, either in land or in personalty, or both, is "exempt" from "attachment, levy or sale" at the suit of a creditor. This is plain, according to the wording of the statute above referred to; plain under the terms of the Constitution of 1868, and in full accord with the spirit and intention of homestead laws as understood in the States of the Union. They are intended for the benefit of debtors, their wives, widows, and children. But if a man is not in debt and is perfectly solvent, he has no need for a homestead exemption, nor has his family. No one can molest him or them by "attachment, levy or sale." So when a man dies solvent, owing no debts, if he dies intestate, his lands go to his wife and children, as ten-

ants in common, and his personalty passes to them under the statute of distribution. The wife and children take the property as heirs at law, as the owners thereof, and the homestead laws have no application whatever to such an estate.

It was admitted in argument, and properly so, that if the intestate had died owing debts, or from any cause there were debts existing against his estate, and against which the widow could claim homestead, that she could maintain her proceeding herein. But there are no debts. The administrator swears that none have been presented, and that he has heard of but two. One of these, that for $65 above referred to, he has long since paid, and it did not exist when this proceeding for homestead was begun. But it is agreed, that the right of homestead must be tested by the *status* of intestate at the time of his death; could he have claimed a homestead against this $65? The idea of a well-to-do man engaged in lending money, owning a large body or bodies of land, planting, &c., claiming a homestead exemption against such a debt, seems to border upon the ludicrous. It is possible, but not probable, under an execution it would have been collected, and the homestead not touched. His son and administrator paid it promptly, and we may fairly assume that he would have done so. Be that as it may, that debt was paid before the homestead proceeding was begun, and to seize upon a trifle whereon to construct a mere technical position, and for the purpose of injuring others, divesting them of their vested rights, does not address itself to my judicial discretion, and cannot be sustained. The eleven dollar debt to the widow, the petitioner, which has never been presented to the administrator, nor proven, is more than satisfied by her admitted indebtedness of $30.55 to the administrator. This case is different from any other reported in this State. In every reported case it is distinctly admitted that there were debts due by the estate, or it is apparent that such debts did exist, because the decisions discuss the law as though such debts did exist.

I never heard of a case in which a widow or anybody else claimed the right to a homestead exemption against her cotenants or other person, unless the estate or person was in debt to the cotenant. Then she would be claiming homestead as against a creditor, and not a cotenant. If a widow without child or children have a homestead in the estate of her deceased husband set off to her, she can, it has been decided, enjoy it until her death, and a cotenant cannot maintain an action for partition thereof. Those decisions refer to cases where such a homestead has been legally set off to the widow, and the action for partition would, if maintainable, result in terminating, ending, destroying her homestead; cut it down, and destroy her use and occupancy thereof for life. The termination of an "exemption" of a homestead is very different from the question now before the Court, which is, has the widow the right now to claim it and to have it set off. This Court has the right to determine this question, and, for the reasons stated, its answer is in the negative. To grant the demand of the petitioner is to give her the exclusive use of 900 acres of land, and $500 in money, for and during her life, at the expense of the children of her deceased husband by his first wife, and in utter disregard of their rights as heirs at law and distributees of the estate of their father. The homestead law, in my opinion, has no application to the facts as found. The third exception is, that the clerk was without jurisdiction in the premises, as the question of petitioner's rights to homestead was pending in this Court, in the partitioners' action above described. This exception is well taken. Petitioner, of her volition, raised that issue in the partition action, and plaintiff replied to it. It was, in this way, made the central issue in that cause, and was pending in this Court when the homestead proceedings were begun.

Wherefore, it is ordered, adjudged, and decreed, that the petitioner, Mrs. Emaline Worley, has no right to a homestead exemption in the estate of her late husband, Coleman Worley, intestate; that the exceptions of Jackson Worley,

numbered three, four, five, and six, above referred to and stated, are sustained; and that the petition for homestead herein and return of the appraisers thereto, be, and hereby are, reversed, set aside, and dismissed, as being of no force or effect, and Mrs. Emaline Worley, petitioner herein, do pay the cost and disbursements of this proceeding, to be taxed by the clerk of this Court.

From this decree the petitioner, Emaline Worley, appeals.

*Messrs. Fred. D. Bryant* and *Thos. S. Moorman,* for appellant, cite: Rev. Stat., 2126, 2129, 2130; 33 S. C., 512; 103 N. C., 170; 25 S. C., 94.

*Mr. Robt. B. Scarborough,* contra, cites: Rev. Stat., 2126, 2134; 20 S. C., 246; 19 S. C., 239; 25 S. C., 94; 12 S. C., 308; 25 S. C., 389; Rev. Stat., 1948, 2129; 33 S. C., 601.

March 31, 1897. The opinion of the Court was delivered by

Mr. Chief Justice McIver. The Court feels bound to say, in the outset, that the "Case," as prepared for argument here, is so defective in several important particulars, that we have been compelled to gather the facts from a brief statement of the testimony set out in the "Case," and from the decree of the Circuit Judge, although there are some manifest clerical errors in the latter, and at least one finding of fact wholly inconsistent with the testimony. The facts, as gathered from these sources, may be stated substantially as follows: On or about the 18th of April, 1895, Coleman Worley departed this life intestate, leaving as his heirs at law his widow, Emaline Worley, and his two sons, Jackson Worley and Rey Worley, the issue of a previous marriage, both of whom were of age at the time of the death of the intestate. Prior to and at the time of the death of intestate, the said Jackson Worley, an unmarried man, lived with his father, as a member of his family, and he still lives with petitioner, his step-mother, in the residence of the intestate. The only property of which the intestate died seized and

4—49

possessed, so far as appears, consisted of a tract of land containing about 900 acres, and a small personal estate, consisting of cash on hand $257.57, and some articles of personal property, which when sold brought the sum of $251.49, making the value of the personal property in all $509.06. On the 17th of January, 1896, the said Rey Worley was duly appointed administrator of the personal estate of the intestate, and having duly qualified as such, obtained from the proper authority an order for the sale of the personal property, and the same was sold on the 1st of February, 1896. At said sale the petitioner, Emaline Worley, bid off certain articles, at prices amounting, in all, to the sum of $30.55, and had never paid for the same. In February, 1896, Jackson Worley instituted an action in the Court of Common Pleas for partition of the real estate of intestate, to which the petitioner and Rey Worley—the latter in his own right, and not as administrator—were made parties defendant. The petitioner, Emaline Worley, filed her answer, but when, does not appear, denying the right to partition, and demanding, *inter alia*, that her homestead, as the widow of the intestate, be assigned and set off to her. Whether the other defendant, Rey Worley, filed any answer, does not appear. To the answer of Emaline Worley, the said Jackson Worley replied, denying her right to homestead, and claiming that, if homestead should be allowed, it should be for his benefit as well as hers. On the 12th of March, 1896, the said Emaline Worley filed a petition with the clerk of the court of common pleas (there being, as we assume, no master for the county of Horry, where the intestate died, and where his land lay), praying that a homestead be assigned and set off to her in the real and personal property of the intestate, her deceased husband. On the 19th of June, 1896, the commissioners appointed for that purpose made their return, setting off to the petitioner, as her homestead, the tract of land containing 900 acres, more or less, valued at $1,000; and, as her personal property exemption, the sum of $30.55, due by her to the administrator

for articles purchased by her at his sale, together with the
sum of $469.45 of the amount in the hands of the adminis-
trator, making the total amount $500. To this return,
the said Jackson Worley, on the 17th of July, 1896, filed
seven exceptions, which are set out in the "Case," and should
be embraced by the reporter in his report of the case, and
the case came before his Honor, Judge Aldrich, upon the
return and exceptions thereto, together with certain testi-
mony which is set out in the "Case," a copy of which is as
follows: "The administration record of estate of Coleman
Worley was in evidence, and by the administrator's ac-
count of sales of personal property, the whole amounted to
$251.49, and cash of intestate on hand $257.57, making a
total personal estate $509.06, exclusive of choses in action,
all of which were appraised doubtful. The administrator
testified that he had not advertised for creditors of the estate
to present their claims, but that he knew his father was not
in debt; that intestate was accustomed to lending money,
and did not go in debt; that the $65 due the lady was for
borrowed money. The pleadings in the actions for parti-
tion were in evidence. The admistrator, as such, was not
made a party to said action, but the plaintiff therein alleged
that "the funds of said estate in hands of the administrator
are largely more than sufficient to pay and discharge the
expenses of administration, and any debts that may possibly
be due and owing. In that connection, the plaintiff alleges
that there are no debts owing by said estate, except, perhaps,
expenses of the last illness of said intestate, for care and
attention."

On the 23d October, 1896, the Circuit Judge rendered
his decree, a copy of which should be incorporated in the
report of this case, wherein he adjudged that the petitioner
was not entitled to any homestead exemption, and that her
petition be dismissed. From this decree the petitioner ap-
peals to this Court, upon the several grounds set out in the
record, which need not be stated here, as we propose, in-

stead of taking up these grounds *seriatim*, to consider what we regard as the controlling questions in the case.

The Circuit Judge, after stating what he regards as the facts of the case, proceeds to consider the several exceptions to the return of the commissioners appointed to lay off the homestead. After stating that the first exception was abandoned at the hearing, and that the second, being based upon merely technical irregularities, he would pass over, as he preferred to dispose of the case upon the merits, he says: "The third, fifth, and sixth exceptions may be considered together," but he manifestly meant the fourth, sixth, and seventh exceptions, as is conclusively shown by the exceptions as stated by him. These exceptions are treated as raising the question whether a right of homestead can be claimed where there are no debts; and finding as matter of fact that there were no debts, he concludes as matter of law that the right of homestead could not be allowed in this case. It is very clear that this conclusion of law rests upon the finding of fact that there were no debts; for he says in his decree that: "It was admitted in argument, and properly so, that if the intestate had died owing debts, or from any cause there were debts existing against his estate, and against which the widow could claim homestead, that she could maintain her proceeding herein." So that it is manifest that the question, whether the conclusion of law above stated is correct, turns upon the inquiry, whether the finding of fact—that there were no debts—can be sustained. It seems to us clear, beyond dispute, that this finding of fact is not only without any evidence to sustain it, but is in direct conflict with the testimony. The undisputed fact is, that the intestate did owe, at the time of his death, at least one debt for borrowed money, amounting to $65; and it is claimed, and there is no denial of such claim, that he owed the petitioner $11. Besides this, he was indebted for the expenses of his last illness, the amount of which does not appear—which, in our view, is not material. And, in ad-

dition to this, his estate would be liable for the expenses of the administration of the estate. Whether there were any other debts cannot be certainly known, for the administrator admits that he never advertised for creditors to present their demands, as he was expressly required to do by section 2046 of the Revised Statutes, for the very purpose of enabling him "to ascertain the debts due from the deceased;" and he is allowed twelve months from the grant of administration for that purpose; and that period had not expired when the administrator testified in this case, or even when the judgment appealed from was rendered. It is true, that the administrator testified that "he knew his father was not in debt;" but in view of the fact that, in the same breath, he also testified that his father owed some lady $65 for borrowed money, his hazardous assertion above quoted is entitled to no consideration whatever; for it certainly is a very hazardous assertion for any person to make that he knew a deceased person was not in debt, especially when the person making the assertion has deliberately neglected to pursue the course prescribed by law for the very purpose of ascertaining whether there were any debts. Indeed, the debtor himself may be ignorant of some claim against him, arising from suretyship or in some other way, which he has entirely forgotten.

The smallness of the amount of the admitted indebtedness of the intestate at the time of his death seems to be regarded by the Circuit Judge as a sufficient reason for disallowing the claim of homestead. But we are unable to accept that view. There is nothing in the statute which countenances the idea that, because the indebtedness is small in amount, such a circumstance is of any weight, or is even entitled to any consideration. On the contrary, the plain meaning of the homestead law, as it has been construed in numerous cases, is that, before any portion of the assets of the intestate can be properly applied to his debts, provision should be made for the homestead exemption, which cannot be touched for the payment of debts.

For, as was said by the late Chief Justice Simpson, in *Hosford* v. *Wynn*, 22 S. C., at page 312, in speaking of the nature of the homestead exemption: "It simply takes property as it finds it, and, carving out a portion, exempts it for the time being from levy and sale, and marking it 'homestead,' puts the debtor, or his widow and children, as the case may be, in possession, with the right to hold against all comers;" and this was quoted with approval in the recent case of *Glover* v. *Glover*, 45 S. C., at page 54. Indeed, the same idea runs through all the cases upon the subject. If so, then it is clear that, the intestate being in debt at the time of his death, his widow and children became then entitled to claim a homestead exemption both in his real and personal property. Their right then vested, and what subsequently occurred cannot defeat that right. The fact that no objection was interposed, so far as appears, to the sale of the personal property by the administrator, and no claim of homestead exemption was then asserted, does not affect their right now, when it is interposed, as is clearly shown by the case of *McMaster* v. *Arthur*, 33 S. C., 512. Most assuredly, the payment of the debt of $65 by the administrator, out of the assets of his intestate which were in his hands, cannot defeat the claim of homestead, for several reasons.

1st. Because, as we have seen, the rights of the parties became fixed and vested at the time of the death of the intestate. 2d. Because the payment of the $65, even if legally made, still left other debts unpaid, for there is no pretense that the debts for the expenses of the last illness, or the funeral expenses, or the expenses of the administration, have ever yet been paid—to say nothing of the debt to the petitioner, which it is claimed was paid by reason of the fact that her purchases at the administrator's sale, which she has not paid, would overbalance her debt. But whether a debt due by the widow alone could be extinguished by the application of any portion of the homestead exemption, which, as we shall presently see, was intended for the benefit of the widow *and children*, is a question which might

admit of grave doubt, if we deemed it of sufficient practical importance in this case to be worthy of consideration. It is true, that the Circuit Judge does not say in his decree that "the expenses of the last sickness and funeral of intestate" have been paid; but there is absolutely no evidence to that effect. On the contrary, the plaintiff in the action for partition—the said Jackson Worley, who seems to be the only person resisting this appeal—alleges in his complaint, "that there are no debts owing by said estate, except, perhaps, expenses of the last illness of said intestate, for care and attention." This exception shows that the debt for the last illness had not been paid when the action for partition was commenced, and though the administrator was examined as a witness, he did not say that such expenses or the expenses of the administration had ever been paid. But the third and conclusive reason is that the debt for $65 cannot be regarded as legally paid, because the administrator had no right to apply to the payment of this debt any portion of the assets in his hands, which amounted to only $9.06 above the homestead exemption, and even that small excess was, legally, first applicable to the funeral expenses and the expenses of the last illness. If, therefore, the administrator did pay the debt of $65, he must, necessarily, have used either the assets in his hands, which by law was exempt from the payment of debts, or he must have used his own funds for that purpose; and surely it cannot be successfully contended that an administrator can defeat the claim of homestead, by paying the debts of his intestate, either out of his own funds or out of the assets of his intestate's estate exempt by law from the payment of debts. Such a doctrine would put it in the power of a malignant or selfish person to defeat the most just and righteous claim of homestead. Besides, it has not been made to appear in this case that the administrator paid this debt before the petition for homestead was filed, for it is stated that such petition was filed 12th of March, 1896; but at what particular time the debt was paid, does not appear; all that does appear is, that

the Circuit Judge says in his decree that the debt was "paid last March;" and as the decree bears date 23d of October, 1896, the debt must have been paid in March, 1896, but whether before or after the 12th of that month, does not appear. So that respondent has failed to prove a fact essential to his contention, which fact it was in his power to prove, as the administrator was examined as a witness, and could have shown by his voucher the date of the payment relied on to defeat the claim of homestead.

Under this view of the case, it becomes unnecessary to consider the question, much debated in the argument here, whether a claim of homestead can be allowed where there are no debts; for, after having shown that there were debts, not only at the time of the death of the intestate (which, under our view, would be sufficient), but also at the time when the petition for homestead was filed, some of which have not yet been paid, so far as appears, it becomes a wholly speculative question, what would be the effect if there were no debts. It seems to us, therefore, that the Circuit Judge erred in disallowing the claim of homestead.

Another aspect of the case, however, remains to be considered. The first exception to the return of the commissioners appointed to lay off the homestead, which the Circuit Judge, in his decree, says was abandoned at the hearing, as we understand it, raised the question whether the clerk erred in granting the prayer of the petition for homestead, after due notice of the pendency of the action for partition; and yet the Circuit Judge holds that the third exception to the return is well taken, although, as it seems to us, the same question is presented by the third exception as that presented by the first exception, which was abandoned. Both of these exceptions impute error to the clerk in proceeding to appoint commissioners to lay off the homestead, solely upon the ground that the question as to the right of homestead was pending in the action for partition which had been previously commenced. But the fact that the first exception was abandoned at the

hearing, causes some embarrassment in disposing of the question. Waiving this, however, in the interest of the respondent, we will proceed to consider the third exception just as if there were no other exception as to the point there raised. It is, no doubt, true, as a general proposition, that where two tribunals have concurrent jurisdiction of the same case, the one which first assumes jurisdiction must adjudicate the question involved, and neither party can be forced into the other jurisdiction. *Jordan* v. *Moses*, 10 S. C., 431. Now, while it is well settled that the Court of Common Pleas has no jurisdiction to appoint commissioners to admeasure and set off the homestead exemption (*Ex parte Lewie*, 17 S. C., 153, and *Myers* v. *Ham.*, 20 S. C., 522), yet it is equally well settled that, where it becomes necessary to determine *the right* to homestead in any case properly pending in the Court of Common Pleas, that Court may determine the question of *right* to homestead, leaving the party claiming such right, if determined in his favor, to apply to the proper authority appointed by statute for that purpose, to carry into effect such right by having the homestead admeasured and set off to him. *Munro* v. *Jeter*, 24 S. C., at page 34. *Swandale* v. *Swandale*, 25 S. C., 393. So that it is clear, from these authorities, that the Court of Common Pleas, having jurisdiction of the action for partition, also had jurisdiction of the question of *right* to homestead, if it became necessary, as it doubtless would, to have that question determined. But it is not so clear that the clerk, when applied to for the appointment of commissioners to lay off a homestead, has any jurisdiction to determine the question of *right* to the homestead claimed. The case of *Ex Parte Brown*, 37 S. C., 181, practically decides that the clerk has no such jurisdiction, for Mr. Justice Pope, in delivering the opinion of the Court, uses this language: "We are not prepared to say that the clerk or master must judicially pass upon the right to homestead. It is opposed to reason to say that the clerk must act judicially with only one party to a controversy before him." But that case also

decides that the Circuit Court, upon exceptions to the return of the commissioners appointed by the clerk to lay off a .homestead, has jurisdiction to determine the question of *right* to homestead claimed. If, therefore, the clerk had no jurisdiction to determine the question as to the petitioner's *right* to the homestead claimed, then this case does not come within the general rule above stated, upon the authority of the case of Jordan *v.* Moses, for it is not a case in which two tribunals have concurrent jurisdiction of the same question.

If it should be contended that the question of the *right* of homestead should be adjudicated in the action for partition rather than under exceptions to the return of the commissioners appointed to lay off the homestead, it is very manifest that such a position is based entirely upon form, without a particle of substance in it. The same question has been adjudged, between the same parties by the same tribunal, after full argument, and surely the fact that it has been adjudged in one form of proceeding rather than in another, is not worthy of consideration. If the Circuit Judge had based his conclusion upon the ground that the question of petitioner's right to homestead, under exceptions to the return of the commissioners appointed to lay off the homestead, could not be considered, because the same question had been raised and was then pending in the action for partition, then a very different question would have been presented. But, instead of doing this, he considers elaborately the question of the petitioner's right to homestead, and disallows the claim, and only towards the close of his decree does he make any allusion to the third exception, which he disposes of with the simple remark, "This exception is well taken." What the parties desired to obtain was an adjudication of the question of the petitioner's right to homestead, and after having obtained such adjudication from the tribunal invested with original jurisdiction of such question, it would look almost like trifling with the administration of justice for this tribunal

to deny them the right to have such adjudication reviewed by the Court appointed for that purpose, upon a purely formal ground, which does not in any way affect the merits. Besides this, we are by no means satisfied that the Court of Common Pleas could, under the action for partition, have undertaken to adjudicate the question as to the *right* of homestead, for that action was not only prematurely but improperly commenced. As has been stated, the action for partition was commenced within less than twelve months after the death of the intestate, and the administrator was not made a party. Now, while we are not aware of any statute, or any decision of a Court of last resort, which forbids the bringing of an action for partition before the expiration of twelve months from the death of the intestate, yet, as we understand, it was a settled rule of practice observed by the former Chancellors, not to entertain a bill for partition until after the expiration of twelve months from the death of intestate, for at least two very good reasons. 1st. Because, as has been said above, the administrator is allowed twelve months within which to ascertain whether there are any debts due, and until that period has expired, the Court cannot know legally, or with any certainty, whether there are debts; and surely it would be wrong to partition the estate of the intestate before it has been ascertained whether there are any debts due, and provision made for their payment. 2d. Such a practice would tend to defeat the rights of innocent creditors of the intestate, for it has been held that a creditor cannot subject the lands of his intestate debtor to the payment of his debt, where such lands have gone into the actual and exclusive possession of the heirs before the creditor has commenced his action for the recovery of his debt, either by partition or otherwise (*Huggins* v. *Oliver*, 21 S. C., 147); and if the lands have been sold before action brought by the creditor, the statute 3 and 4 of W. & M. would forbid his subjecting the lands, in the hands of the purchaser, to the payment of his debt. Now, as sec. 2322, Rev. Stat., forbids a creditor

from commencing an action against the administrator for the recovery of any debt due by the intestate until after the expiration of twelve months from the grant of administration, it is very obvious, that if an action for partition should be entertained before the expiration of the twelve months, the rights of creditors might and probably would be defeated. The only instances, so far as we are informed, in which this salutary rule of practice has been disregarded are the cases of *Pearson* v. *Carlton*, 18 S. C., 47, and *Williams* v. *Mallory*, 33 S. C., 601, more fully reported in 11 S. E. Rep., 1068, and the confusion, delay, and unnecessary expense which resulted in those cases, from a disregard of this salutary rule, afford ample illustrations of its wisdom.

But the action for partition was not only prematurely but it was incorrectly brought, inasmuch as the administrator was not made a party, as required by Rule 55 of the Circuit Court. *Williams* v. *Mallory, supra.*

If it should be said that the allegation in the complaint for partition, that the funds in the hands of the administrator are largely more than sufficient to pay and discharge the expenses of administration, as well as any debts that may possibly be due and owing, dispensed with the necessity for making the administrator a party, the obvious answer would be, how could the Court know whether such allegation was true or not, when the administrator, not being a party, has had no opportunity either to admit or deny such allegation? The pleadings in the action for partition, though offered in evidence, are not before us, and, therefore, all we know of what they contain is what may be obtained from the Circuit decree, and from the statements contained in the testimony above set out.

There is only one other matter remaining to be considered, as to which the Court feels some embarrassment, arising from the fact that the return of the homestead commissioners is not before us. The fifth exception to that return imputes error to the commissioners in assigning the homestead to Emaline Worley *alone*, whereas,

if assigned at all, it should be for the benefit of the respondent, Jackson Worley, as part of the family of the said Coleman Worley, as well as for the benefit of said Emaline Worley. Now, what the return does contain we do not know, as it is not before us, but from a remark made in the Circuit decree, which will be presently quoted, we suppose that the Circuit Judge considered that in the return the homestead was assigned to Emaline Worley exclusively. It does not appear that the Circuit Judge passed specifically upon this fifth exception; for, while he does quote what he designates as the *fifth* exception, the quotation shows, beyond dispute, that he was really considering the *sixth*, and he nowhere else alludes to the point raised by what is really the fifth exception, unless it be when he uses the following language: "To grant the demand of the petitioner is to give her the *exclusive* use of 900 acres of land and $500 in money for and during her life, *at the expense* of the children of her deceased husband by his first wife, and in utter disregard of their rights as heirs at law and distributees of the estate of their father" (italics ours). From this language it may be reasonably inferred that the Circuit Judge regarded the return as assigning the homestead to the petitioner, Emaline Worley, for her exclusive use and benefit. If the return does, in fact, so provide, then, in that respect, it was erroneous and should be corrected. Sec. 2129, Rev. Stat., expressly provides that where the intestate dies leaving a widow and children, the widow *and children, not* the widow alone, shall be entitled to the homestead exemption.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for the purpose of carrying out the views herein announced.