9634

GLADDEN *ET AL.* v. CHAPMAN *ET AL.*

(91 S. E. 796.)

1. JUDGMENT—COLLATERAL ATTACK—STATUTE.—In view of Code Civ. Proc. 1912, sec. 185, as to purchasers in good faith under judgments, judgment in a partition suit, and sale made thereunder, must be sustained against collateral attack in an, action to recover possession of the land, unless it affirmatively appears on the face of the record that the Court had no jurisdiction of the subject of the action and of the parties; a purchaser in good faith at a judicial sale being bound only to see that the Court has jurisdiction of the subject of the action and the parties, not being affected by irregularities or errors in the record for which the judgment may be vacated on

direct attack or reversed on appeal, or by secret vices affecting the judgment, which are not disclosed by examination of the record.

2. PARTITION—JUDGMENT—JURISDICTION.—Where the heirs of a decedent left the State 20 years before his death, in suit by remaining heirs to partition the decedent's lands, the Court acquired jurisdiction of the absent heirs, though it held them to be dead for purposes of distribution; the matter merely suggesting error in the judgment, which, if conceded, would not avail the absent heirs in a collateral attack upon it.

3. JUDGMENT — COLLATERAL ATTACK — PRESUMPTION.—It must be presumed, from judgment ordering sale of land for partition, that the Court considered and adjudicated the regularity and sufficiency of every step in the proceedings leading up to it, including the sufficiency of the complaint, the issuance and service of process on defendants, and the rights and interests of the parties to the action under the allegations and evidence, and, though the conclusions might have been erroneous and reversible on appeal, they would not make the judgment void collaterally.

4. JUDGMENT—PLEADING—FAILURE TO STATE CAUSE OF ACTION—JURISDICTION.—Merely because the complaint in a partition suit did not state facts sufficient to constitute a cause of action against absent defendants, the Court did not fail to acquire jurisdiction of the action as to them, there being no connection between jurisdiction and sufficient allegations.

5. PROCESS—SERVICE—PUBLICATION—NAMES OF DEFENDANTS.—Judgment in a partition action was not void as to defendants, who left the State 20 years before the death of the owner of the land, because they were summoned by publication and sued in the names by which they were known when they left the State, and not by any others acquired by marriage or otherwise.

6. JUDGMENT — COLLATERAL ATTACK — PREMATURE ACTION — PARTIES— ADMINISTRATOR—RULE OF COURT.—The defect that an action for partition of decedent's land was brought within 12 months after his death, and that the administrator was not made a party, as required by rule 55 of the Circuit Court, was not jurisdictional.

---

FOOTNOTE.—As to collateral attack upon judgment because of insufficiency of pleadings, see notes in L. R. A. 1916e, 316 to 326. As to what is a direct as distinguished from a collateral attack on a judgment, see notes in Ann. Cas. 1914b, 82, 52 L. R. A. (N. S.) 1061. As to validity of service by publication in action for partition, see notes in Ann. Cas. 1916e, 1002, and 1914d, 677. As to validity of judgment rendered against a married woman sued in maiden name, see note in 16 A. & E. Ann. Cas. 795. As to applicability of doctrine of *idem sonans* to substituted or constructive service of process, see notes in L. R. A. 1915b, 1149, 30 L. R. A. (N. S.) 122.

Before RICE, J., Cheraw, April, 1915.    Affirmed.

. Action by Minnie L. Gladden and others against P. E. Chapman and another.    From a judgment against certain plaintiffs, they appeal.

*Messrs. Stevenson & Prince,* for appellants, cite: *As to necessity for existence of cause of action to sustain service by publication:* Code Civ. Proc., sec. 185.    *Death of party:* 23 S. C. 291.    *Publication in maiden name no notice to married woman:* Code Civ. Proc., sec. 226; 37 Cal. 346; 58 Kan. 137; 19 L. R. A. (N. S.) 984; 77 Tex. 498; 110 U. S. 151; 52 How. Pr. 500; 28 L. R. A. (N. S.) 438; 11 L. R. A. (N. S.) 677; 61 Iowa 417; 17 L. R. A. (N. S.) 238, 239; 18 Wall. 330; 33 L. R. A. (N. S.) 353.    *Action premature:* 49 S. C. 59, 60; 21 S. C. 147; 18 S. C. 47; 33 S. C. 601; 11 S. E. 1068.

*Messrs. Miller & Lawson,* for respondent, cite: *As to idem sonans:* 34 S. C. 59; 54 L. R. A. (N. S.)' 1149; 19 L. R. A. (N. S.) 983; 15 Enc. 916; 21 Enc. 313, *et seq.;* 13 Am. Dec. 232; 18 L. R. A. (N. S.) 643; 100 Am. St. Rep. 322; 130 Am. St. Rep. 1094; 133 Am. St. Rep. 526.    *As to action being premature:* 83 S. C. 173.    *Title of purchaser:* Code Civ. Proc., sec. 185; 47 S. C. 543, 554.

March 9, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action to recover possession of a tract of land, which plaintiffs claim as heirs of James H. Kessiah. Defendants claim as purchasers under a judgment of the Circuit Court under which the land was sold for partition amongst the heirs of James H. Kessiah.    The record in that action, which defendants pleaded as an estoppel, showed

that two of the plaintiffs were not parties thereto and that four of them were. The Court directed a verdict for the two who were not parties and against the four who were. The latter appealed.

In 1888, Martha, the wife of James H. Kessiah, left him and went to North Carolina, taking with her their children. Kessiah died, intestate, April 1, 1908. His brother, George W. Kessiah, administered upon his estate, and in October, 1908, brought an action for partition of his land, wherein he was plaintiff, and another brother, Robert, and a sister, Catherine, and Martha, the wife of James H., and four of their children were named as defendants. The verified complaint in that action alleged, *inter alia,* that the plaintiff and the defendants, Robert and Catherine, were the only heirs of James H., and were the owners, as tenants in common, of the land sought to be partitioned; that Martha, the wife of James H., and Elvie, Albert, Henry and Susannah, his children, left the State more than 20 years before, and had never returned or been heard of, and that their places of residence, if they were alive, were unknown, and could not, with due diligence, be found. The relief prayed for was that the land be sold and the proceeds divided amongst the brothers and sister of James H. Plaintiff's affidavit, filed with the complaint, stated that a cause of action existed in his favor against the defendants, on the grounds stated in the complaint, and (after reiterating the allegation as to their absence and his inability to ascertain their places of residence) that, if living, they had an interest in the land sought to be partitioned. Upon the complaint and affidavit, an order of publication was granted and the summons was duly published accordingly. On proof of default of defendants, the cause was referred to a referee to take testimony and report. The referee took testimony, and thereupon reported that the allegations of the complaint were true, and that plaintiff was entitled to the relief prayed for. His report was confirmed and made the judgment of the Court. The

land was sold, and bought by defendants, who paid the purchase price and took possession under the deed made to them by the officer of the Court.

This being a collateral attack upon it, that judgment and the sale made under it must be sustained, unless it affirmatively appears upon the face of the record that the Court had no jurisdiction of the subject of the action, or of the parties. Sound public policy requires that the solemn judgments of the Courts and rights acquired thereunder be sustained against collateral assault, if in reason and justice it can be done. If such judgments and rights are lightly overthrown, the Courts are brought into disrepute and merited contempt. What sort of an opinion must the average layman entertain of a Court and its administration of justice, if that Court should sell him land and take his money for it, and afterwards tell him that he has no title and take it away from him? Our people have an abiding faith in "Court titles," and it should not be shaken. Hence the rule is as above stated, and the purchaser in good faith at a judicial sale is bound only to see that the Court had jurisdiction of the subject of the action and of the parties in interest. He is not affected by irregularities or errors in the record for which the judgment might have been vacated in a direct attack, or reversed on appeal, or by secret vices affecting the judgment, which are not disclosed by examination of the record. *Trapier* v. *Waldo,* 16 S. C. 276; *Turner* v. *Malone,* 24 S. C. 398; *Tederall* v. *Bouknight,* 25 S. C. 275; *Hunter* v. *Ruff,* 47 S. C. 525, 25 S. E. 65, 58 Am. St. Rep. 907.

While section 185 of the Code of Civil Procedure, which authorizes the publication of the summons in certain cases, provides that the defendant against whom publication is ordered shall be allowed to defend the action before and after judgment, on conditions specified, and even that restitution may be ordered, if the judgment has been collected or enforced, yet, in accord with and confirmation of the prin-

ciple and policy above stated, it provides further that "the title to property sold under such judgment to a purchaser in good faith shall not be thereby affected." *Yates* v. *Gridley,* 16 S. C. 496; *Clemson College* v. *Pickens,* 42 S. C. 511, 20 S. E. 401; *Hunter* v. *Ruff, supra.*

Jurisdiction of the subject of the action has not been, and cannot be, questioned. But appellants contend that the judgment is void as to them, because it appears on the face of the complaint therein that no cause of action was stated against them. Their contention is that, by necessary implication, it is there alleged that they were all dead, and also that they all died without leaving issue, for otherwise the allegation that plaintiff and his brother and sister were the only heirs of their father and the owners of his land was false as matter of law; that, if dead, they could not have been made parties, and, if alive, no cause of action was stated against them; that it would be inconsistent to hold that they were alive for the purpose of acquiring jurisdiction of them, but dead for the purposes of distribution; that, if they were alive, so that they could be reached by the jurisdictional arm of the Court, they were within reach of its distributing hand.

The argument is specious, but unsound. The fallacy of it lies in ignoring the fact—not a supposition—that they were alive. Therefore they were within the reach of the jurisdictional arm of the Court. The fact that the Court adjudged that they were dead for purposes of distribution does not affect its jurisdiction, but merely suggests error in the judgment, which, if conceded, would not avail them in a collateral attack upon it. As said by Mr. Justice Johnson, for the New York Court of Appeals, in *People* v. *Sturtevant,* 9 N. Y. 263, 269, 59 Am. Dec. 536:

"Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the Court. The question of its existence is an abstract inquiry, not involving the existence of an equity to be enforced, nor the right of the plaintiff to avail himself of it if it exists. It precedes these

questions, and a decision upholding the jurisdiction of the Court is entirely consistent with a denial of any equity, either in the plaintiff or in any one else. The case we are considering illustrates the distinction I am endeavoring to point out, as well as any supposed case would. It presents these questions: Have the plaintiffs shown a right to the relief which they seek? and has the Court authority to determine whether or not they have shown such a right? A wrong determination of the question first stated is error, but can be re-examined only on appeal. The other question is the question of jurisdiction."

It must be presumed from the judgment rendered that the Court considered and adjudicated the regularity and sufficiency of each and every step in the proceedings leading up to it, including the sufficiency of the complaint, the issuance and service of process upon the defendants, and the rights and interests of the parties to the action under the allegations and evidence; and although the conclusions with respect to those matters, or any of them, might have been erroneous, so that they would have been reversed on appeal, they do not make the judgment void collaterally. *Hunter* v. *Ruff, supra;* Van Fleet on Collateral Attack, sec. 1; 23 Cyc. 1078.

But, if it be conceded that the complaint did fail to state facts sufficient to constitute a cause of action against the absent defendants, that was not a jurisdictional defect. 23 Cyc. 1071, 1093. As to the sufficiency of allegations to confer jurisdiction, Judge Van Fleet, in section 61 of his work on Collateral Attack, says:

"The rule is this: *Can it be gathered from the allegations, either directly or inferentially, that the party was seeking the relief granted or that he was entitled thereto?* If it can, the allegations will shield the judgment from collateral assault."

Further on, in the same section, the learned author says:

"A large number of cases are cited in chapter VIII, *infra,* where the judgment is not void, although the affidavit, complaint or petition showed affirmatively that the plaintiff *had no cause of action whatever.* These illustrations show that there is no connection between jurisdiction and sufficient allegations. In other words, in order to 'set the judicial mind in motion,' or to 'challenge the attention of the Court,' it is not necessary that any material allegation should be sufficient in law, or that it should even tend to show facts that are sufficient. If that were the rule, the absence of any material allegation would always make the judgment void, because it cannot be said that such a complaint has any tendency to show a cause of action. It will be seen from the cases about to be cited that, when the allegations are sufficient to inform the defendant what relief the plaintiff demands, the Court having power to grant it in a proper case, jurisdiction exists, and the defendant must defend himself."

He concludes:

"That, if there is *any petition at all invoking the action of the Court,* its judgment is not void."

The subject is given elaborate consideration in *Jarrell* v. *Laurel Coal & Land Co.,* 75 W. Va. 752, 84 S. E. 933, L. R. A. 1916e, 312, and an editorial note to that case in which it appears that the rule laid down by Judge Van Fleet is sustained by the weight of reason and authority.

Appellants contend, further, that the judgment is void as to them, because they were not sued by their correct names: For instance, that Ella V. Martin was not lawfully summoned by the name of Elvie Kessiah, nor Macon Albert Kessiah, by the name of Albert Kessiah, and so on.

The answer to that contention lies in the undisputed evidence that, when they left the State they were known by the names in which they were sued, and none other, and that they knew themselves by those names; and if they had any other, it was only known to them and their parents. There is no evidence that they were known by any other

names than those in which they were sued, except that
Susannah was called Susie, which is commonly known to be
one of the diminutives of that name.    If Ella V. Martin saw
the published summons to Elvie Kessiah (whether she did
or not is immaterial—*Hunter* v. *Ruff, supra*), she must have
concluded that she was the person intended, for she knew
that, when a child, she was called Elvie Kessiah, and espe-
cially so when that name appeared in connection with the
names of her mother and sister and brothers.    Under the
circumstances of this case, it would be unreasonable to hold
that the Court acquired no jurisdiction of her, because she
was sued in her maiden name, instead of that which she
acquired by marriage after she left the State.    The practical
effect of such holding would be that she could not have been
made a party at all; for she could not have been sued by
description as an heir of James H. Kessiah whose name was
unknown, because her name was known.    Moreover, as she
was unmarried when she left the State, and had not been
heard of for more than 20 years, and as due diligence could
not discover whether she was dead or alive, or, if alive, her
place of residence, how could it be said that it should have
discovered her married name?    So, also, as to the others.
We must conclude, therefore, that the names given the
appellants in the published summons were sufficient for the
purpose of giving them notice of the action.    *Emery* v. *Kipp,*
154 Cal. 83, 97 Pac. 17, 19 L. R. A. (N. S.) 983, 129 Am.
St. Rep. 141.

The next objection to the judgment is that the action was
prematurely and improperly brought, because it was com-
menced within 12 months after the death of the intestate,
and because the administrator of his estate was not
made a party, as required by rule 55 of the Circuit
Court.    The wisdom of the rule is unquestioned.
Some of the reasons why it should be observed are pointed
out in the opinion of this Court in *Ex parte Worley,* 49 S.
C. 41, 26 S. E. 949.    But it'is only a rule of practice, and,

while the failure to observe it may have been error, which would have been corrected on application to the Court, or on appeal from the judgment, clearly it was not a jurisdictional defect.

The undisputed evidence shows that the defendants in this action were purchasers in good faith under a judgment rendered by a Court that had jurisdiction of the subject of the action and of these appellants. It follows, under the authorities above cited, that appellants cannot be permitted to attack that judgment in a collateral action. No doubt a wrong was done them; but they were not altogether without fault. Their conduct, in remaining absent from the State so long, without communicating with their relatives or friends here, made it possible; and they have no just ground to complain because the Court declines to correct the wrong done them by doing a greater wrong to the defendants, and, in so doing, set a mischievous precedent.

Judgment affirmed.

MR. JUSTICE WATTS did not participate in the consideration of this case.