### 17691

Edwina BENNETT, Smith Bradshaw, Mary Lee Patterson, Sam Mouzon, Estelle Mack, Horton Mack, Sue Mack, Tarbell Mack, Bertha Middleton, Ethel Boyd, Charles Bennett, Mary Bennett, Frank Bennett, George Bennett, Louise Bennett and Susie Bennett, Appellants, v. G. T. FLOYD and Henry Roe, representing the unknown heirs, next of kin, administrators, executors and assigns of E. B. Rhodus, Respondents.

(115 S. E. (2d) 659)

*Elliott D. Turnage, Esq.,* of Darlington, *for Appellants,*

*Messrs. Rogers & Riggs* and *John G. Dinkins,* of Manning, *for Respondent,*

August 3, 1960.

OXNER, Justice.

Appellants brought this action to recover a 269-acre tract of land in Clarendon County. It was formerly owned by James A. Bennett who died intestate about 1904. Appellants claim that as his sole heirs at law, title is now vested in them and they are entitled to possession. G. T. Floyd, now deceased who was the only material defendant, claimed that the property was partitioned in 1928 between the heirs of James A. Bennett and sold at public auction to the Logan-Robinson Fertilizer Company from which he purchased it in 1942 and immediately went into possession. In reply, appellants assailed the validity of the partition proceedings upon numerous grounds. A more detailed statement of the issues made by the pleadings will be made after tracing the chain of title since Bennett's death.

James A. Bennett was survived by a widow and nine children. His widow never remarried and died intestate. After his death several members of the family continued to reside on and farm this tract of land. In 1921 Washington Bennett, one of the sons, mortgaged his interest to E. B. Rhodus to secure an indebtedness of $384.10. Taxes for the year 1923, amounting to $77.00, assessed in the name of the estate of

James Bennett, became delinquent. To satisfy these taxes the property was sold by the Sheriff of Clarendon County at public auction in February, 1925 and bid in for $97.70 by E. B. Rhodus. He received a tax deed from the Sheriff on March 3, 1926. Apparently Rhodus never sought to obtain possession under this conveyance. In 1927, Mallard Lumber Company, which had purchased the interest of several of the heirs, brought an action to partition the property. By that time some of the children of James Bennett had died, leaving in some instances minor children. Several of the heirs had left the State and their whereabouts were unknown. After his father's death, the interest of Washington Bennett was increased by inheritance from some of the heirs and by purchase from others, so that at the time the partition action was brought, he owned almost a half interest in the property. The interest of each of the other heirs was very small. Plaintiff in that action, Mallard Lumber Company, owned a 4/52 interest only. The non-resident heirs were served by publication and guardians *ad litem* duly appointed for the minors. Most of the adult defendants defaulted. At the hearing, E. B. Rhodus, who was a party to the partition proceedings, testified that nothing had been paid on the mortgage given him by Washington Bennett and further stated that he would make no claim of title under the tax deed if reimbursed for all taxes which he had paid. By agreement of all parties who had appeared, ten acres of the 269-acre tract were set aside by the Court to certain of the heirs as their share and the remainder ordered sold at public auction. At a sale held in November, 1928, the 269-acre tract, less the ten acres above mentioned, was bid in by Logan-Robinson Fertilizer Company for $100.00 and the usual deed executed on November 20, 1928. Apparently Washington Bennett and his family remained on this farm although the record does not disclose under what arrangement. On December 4, 1942, Logan-Robinson Fertilizer Company, for a stated consideration of $2,500.00, conveyed this land to G. T. Floyd. After this conveyance Washington Bennett continued to reside on the prop-

erty but as a tenant of Floyd. Washington Bennett died in 1954. Thereafter his son, George Bennett, continued to rent the tract of land from Floyd. During the last few years there were also other tenants. Although George Bennett denied renting from Floyd, stating that he thought he was making payments on a mortgage, the overwhelming weight of the evidence is that Floyd took exclusive control of the property under a claim of ownership and was so recognized by Washington Bennett and later by his son George.

The instant suit by appellants was brought in January, 1959. Named as defendants were G. T. Floyd and the estate of E. B. Rhodus. However, it was conceded that the latter had no interest in the property, so that the action was in effect against G. T. Floyd alone. While this action was pending Floyd died and the executrix and devisees under his will were substituted as parties defendant.

In appellants' complaint the partition action was completely ignored and they sought only to set aside the tax deed to Rhodus. They asserted that Washington Bennett was an uneducated Negro who had been promised financial assistance by Rhodus and that a fiduciary relationship existed between them. They further alleged that Rhodus, in violation of his agreement to pay the taxes, permitted the property to be sold for delinquent taxes and bid it in himself. The tax sale was further attacked upon the ground that the property was improperly assessed in the name of the "Estate of James Bennett". In his answer, Floyd set up the partition proceedings and claimed that he was the *bona fide* purchaser from the Logan-Robinson Fertilizer Company. In addition he claimed title both by adverse possession and by prescription. A reply was filed by appellants in which they attacked the validity of the partition proceedings upon the grounds (1) that certain heirs were never served with the summons and complaint, (2) that one of the heirs, James Bradshaw, although living and a person *non compos mentis* at the time the action in partition was brought, was not made a party defendant, (3) that the Court was without jurisdiction to

partition in kind a part of the property and sell the remainder, and (4) that the Mallard Lumber Company, Rhodus and Logan-Robinson Fertilizer Company conspired to divest the heirs of their title to the property and through fraudulent collusion permitted it to be sold for an inadequate and unconscionable price. Appellants further denied in their reply that Floyd was ever in possession of the property or held adversely.

The instant case was referred to a referee who after hearing the testimony found that all those having an interest in the property were made parties to the partition proceedings and duly served with process; that there was no proof of fraud; that the proceedings in partition were regular in every respect and binding on all the parties; and that Floyd through the conveyance from Logan-Robinson Fertilizer Company acquired good fee-simple title. He further found that Floyd and his predecessor in title had been in actual, open and notorious possession under a claim of ownership continuously for a period of thirty years from which a grant would be presumed, and that Floyd himself had been in actual, open and notorious possession under a claim of ownership for more than ten years, thereby establishing title by adverse possession. On exceptions by appellants, the case was heard by the circuit Judge who confirmed the report of the referee in all respects.

We are not concerned on this appeal with the validity of the tax deed to Rhodus for no one is asserting any title under it. It is respondents' claim that G. T. Floyd was a purchaser in good faith from Logan-Robinson Fertilizer Company which they say acquired title under a judgment rendered by a court that had jurisdiction of the subject matter and of all parties having an interest in the land sought to be partitioned. At the outset we are met with the rule that "the purchaser in good faith at a judicial sale is bound only to see that the court had jurisdiction of the subject of the action and of the parties in interest. He is not affected by irregularities or errors in the record for which

the judgment might have been vacated in a direct attack, or reversed on appeal, or by secret vices affecting the judgment, which are not disclosed by examination of the record." *Gladden v. Chapman,* 106 S. C. 486, 91 S. E. 796, 797. The Court there further stated: "Sound public policy requires that the solemn judgments of the courts and rights acquired thereunder be sustained against collateral assault, if in reason and justice it can be done."

We will first discuss the contention of appellants that all of the heirs were not served with process. Although in appellants' reply it is claimed that five were not served, in their brief they refer to only three, namely, Washington Bennett, Rhetus July and Janie Lee July. The affidavit of service contained in the record includes all of these parties. This affidavit also shows service on the person with whom Rhetus July and Janie Lee July, both minors, resided and the judgment roll discloses that a guardian *ad litem* was appointed for them. Under these circumstances, the burden was on appellants to establish by clear and convincing evidence that this affidavit of service was false. In *Singleton v. Mullins Lumber Co.,* 234 S. C. 330, 108 S. E. (2d) 414, 420, it was stated: "Due proof of service appears in the record of the foreclosure proceeding. Such a record, standing as it has for approximately half a century, may not be overthrown by less than the clearest and most convincing evidence. To hold otherwise would be a dangerous thing, imperiling titles to real estate and other rights long since adjudicated; it would, moreover, be contrary to precedent unbroken in the history of our jurisprudence. Even though proof of service were wholly lacking, it would be presumed that the court that rendered the judgment would not have done so without proper proof of service of the summons in the cause."

Appellants' testimony as to lack of service falls far short of meeting the required quantum of proof. It is largely negative in character and wholly unsatisfactory. The referee and circuit Judge were fully warranted in rejecting it. The exceptions relating to this question are overruled.

It is next contended that James Bradshaw, one of the heirs, was living at the time the partition action was instituted and was not made a party thereto. In support of this contention, appellants offered two witnesses. One testified that James Bradshaw died in 1928. He was unable to fix the exact date but stated it was some time after March 28th. He admitted, however, that he was then only four years of age. The other testified that James Bradshaw died in June, 1928. Both of these witnesses were testifying from memory. No documentary proof was offered by appellants. This testimony is contradicted by that given in the partition proceeding which was to the effect that James Bradshaw died prior to the commencement of the action. The testimony in that proceeding can properly be considered in determining the factual issue now raised. The judgment roll in the partition suit was offered in evidence by appellants without qualification or restriction. Under these circumstances, it must be treated as admitted generally, as applicable to any issue it tended to prove, and the contents thereof available to either party to this action. *Greenville County v. Stover,* 198 S. C. 240, 17 S. E. (2d) 535; *Arnold v. Life Insurance Co. of Georgia,* 226 S. C. 60, 83 S. E. (2d) 553. The last mentioned evidence is fully sufficient to support the concurrent finding of fact by the referee and circuit Judge that James Bradshaw died prior to the commencement of that action. Apart from this, however, the contention now made by appellants is inconsistent with the stipulation between the parties in the instant case "that the heirs shown in the case of *Mallard Lumber Company v. James Bennett et al.* are all the heirs of James Bennett deceased."

The validity of the partition decree is assailed upon the ground that the Court was without power to allot to one tenant in common his share in kind and order a sale of the remainder. We find nothing in our statutes relating to partition denying such power. The Court's inherent equitable power therefore remains unimpaired. While we have found no case in this State passing precisely

upon the question now under consideration, the general authority elsewhere is that a court of equity under proper circumstances may allot a part of the land to one co-tenant and order the remainder sold for division among the other co-tenants. In *Swogger v. Taylor,* 243 Minn. 458, 68 N. W. (2d) 376, 379, a wealth of authority is given in support of the statement that "the court in the exercise of its inherent equitable power may decree, where practicable and where no prejudice will result to the owners, a partial partition in kind by allotting to one of the owners one of several tracts, or a part of a single tract, in satisfaction of his share, and order a partition by sale of the remainder of the single tract, or of the other tracts, with a division of the sale proceeds among the other owners in satisfaction of their respective shares." Also, see *Hall v. Hall,* 250 Ala. 702, 35 So. (2d) 681.

The remaining ground upon which the judgment is attacked is that the property was sold at a grossly inadequate price as a result of fraudulent collusion between the Mallard Lumber Company and Rhodus. If there existed such conspiracy, it was a vice which could not have been discovered by an examination of the record and, therefore, could not affect a *bona fide* purchaser. Moreover, there is no evidence to sustain the allegation of fraud. It may not be inferred from the fact alone that the property brought only $100.00 when sold. Inadequacy of price, unless so gross as to shock the conscience of the court or accompanied by circumstances from which fraud may be clearly inferred, will not justify the overthrow of a judicial sale. *Singleton v. Mullins Lumber Co., supra,* 234 S. C. 330, 108 S. E. (2d) 414; *Hamilton v. Patterson,* S. C., 115 S. E. (2d) 68. There is no testimony showing the actual value of this property when it was sold in 1928. It brought substantially the same price as when sold for taxes in 1925. No legal duty rested upon either the Mallard Lumber Co. or Rhodus to see to it that there was a bid for the full value of the property. If it was sold at an inadequate price, it was probably

due to the lack of interest on the part of the heirs of James Bennett. This is understandable. The only heir having a substantial interest was Washington Bennett. His share was heavily mortgaged and there were taxes to be paid. The fractional interest of the other heirs was exceedingly small. If a wrong was done them, they are not altogether without fault. As stated by the Court in *Gladden v. Chapman, supra,* 106 S. C. 486, 91 S. E. 796, 798, "they have no just ground to complain because the court declines to correct the wrong done them by doing a greater wrong to the defendants, and, in so doing, set a mischievous precedent."

Having concluded that appellants failed to overcome the presumption that the partition proceedings were valid, it is not necessary to determine whether Floyd established title by adverse possession. However, we have no hesitancy in saying that the overwhelming weight of the testimony is to that effect. Continuously for a period of approximately 17 years he leased the property, collected the rents and paid the taxes. He cut timber from the premises, cleared a substantial area of wood and stump land, repaired some of the houses and constructed new buildings, including houses for tenants and barns for the livestock and farm produce, and made various other improvements. His hostile possession was so open, visible and notorious that appellants knew, or in the exercise of ordinary diligence should have known, of the adverse character of his claim. *Graniteville Company v. Williams,* 209 S. C. 112, 39 S. E. (2d) 202. It is conceded that all who were minors became of age more than ten years prior to the commencement of this action.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.