762 S.E.2d 729

**BLOODY POINT PROPERTY OWNERS ASSOCIATION, INC., David L. Fingerhut, and Patricia M. Santry, Respondents,**

v.

**William A. ASHTON, Jr. and Michele C. Ashton, Appellants.**

**Appellate Case No. 2013–000222.**

**No. 5262.**

Court of Appeals of South Carolina.

Heard May 7, 2014.

Decided Aug. 20, 2014.

James Frederick Berl, of Law Offices of James F. Berl, PC, of Hilton Head Island, and Dustin Lee, of Lee Law Firm, LLC, of Hilton Head Island, for Appellants.

Terry A. Finger, of Finger & Fraser, PA, of Hilton Head Island, for Respondent Bloody Point Property Owners Association, Inc.; and Matthew Tillman, of Womble Carlyle Sandridge & Rice, LLP, of Charleston, for Respondents David L. Fingerhut and Patricia M. Santry.

LOCKEMY, J.

William A. Ashton, Jr. and Michele C. Ashton appeal the master-in-equity's denial of their motion to vacate/set aside a foreclosure sale, arguing the master erred in finding (1) they were properly served; (2) their due process rights were not violated; (3) the foreclosure sales price did not shock the conscience of the court; and (4) David L. Fingerhut and Patricia M. Santry were bona fide purchasers for value pursuant to section 15–39–870 of the South Carolina Code. We affirm.

## FACTS/PROCEDURAL BACKGROUND

This action arises from the foreclosure sale of Lot 55, Daufuskie Island Club, Phase 1, Bloody Point, in Beaufort County (the Property). The Bloody Point Property Owners Association, Inc. (the Association) commenced the foreclosure action on May 17, 2011. The Association asserted claims for foreclosure of a lien against the Property's owners, William A. Ashton, Jr. and Michelle C. Ashton (Appellants),[1] for payment of Association dues and fees.

Appellants are residents of Chester County, Pennsylvania. The foreclosure summons and complaint were delivered to the Chester County Sheriff's Office (the Sheriff's Office) for ser-

---

1. Appellants purchased the Property in 2001 for $201,500.

vice on Appellants at their last known address. According to the affidavits of service returned by the Sheriff's Office, a deputy unsuccessfully attempted to serve Appellants on four separate occasions. Thereafter, Julie Scarfino, counsel for the Association, filed an affidavit for service by publication. On July 20, 2011, the Beaufort County Clerk of Court filed an order of publication authorizing service of Appellants by publishing a copy of the summons and complaint in Beaufort County's *The Island Packet* newspaper once a week for three consecutive weeks and mailing a copy of the summons and complaint to Appellants at their last known address.

On September 27, 2011, the master-in-equity found Appellants in default. Subsequently, on December 2, 2011, the master entered a report and judgment of foreclosure and sale wherein he held Appellants owed the Association $2,971.70 in unpaid assessments and $5,738.97 in attorney's fees and costs. A foreclosure sale was held on January 3, 2012. David L. Fingerhut and Patricia Santry (the Fingerhuts) purchased the Property for $8,800 at the sale.

On February 2, 2012, Appellants filed a motion to vacate/set aside the foreclosure. In their motion, Appellants argued the foreclosure sale should be set aside because the sales price was so low as to "shock the conscience" of the court. Appellants further asserted the Association improperly served the summons and complaint by publication. Appellants did not dispute the validity of the debt or their failure to pay dues and fees to the Association.

On May 9, 2012, the Fingerhuts filed a memorandum in opposition to the motion to vacate, wherein they argued they were good faith purchasers for value under section 15–39–870 of the South Carolina Code. The Fingerhuts further asserted (1) $2,793.20 in taxes and fees unpaid by Appellants should be added to the sale price; (2) the foreclosure sales price did not shock the conscience of the court; and (3) the Association properly served Appellants pursuant to section 15–9–710 of the South Carolina Code.

On July 24, 2012, the master issued an order denying the motion to vacate, holding (1) the Fingerhuts were good faith purchasers for value; (2) the Fingerhuts paid $11,593.20 for the Property; (3) the foreclosure sales price did not shock the

conscience of the court; (4) the Association complied with the order for publication; and (5) Appellants were properly served with the summons and complaint. On July 25, 2012, Appellants filed a motion to reconsider the master's order denying the motion to vacate. The master denied the motion in a form order. This appeal followed.

## STANDARD OF REVIEW

The determination of whether to set aside a foreclosure sale is a matter within the discretion of the trial court. *Wells Fargo Bank, NA v. Turner,* 378 S.C. 147, 150, 662 S.E.2d 424, 425 (Ct.App.2008). "An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions." *Carson v. CSX Transp., Inc.,* 400 S.C. 221, 229, 734 S.E.2d 148, 152 (2012).

## LAW/ANALYSIS

### I. Bona Fide Purchasers

Appellants argue the master erred in finding the Fingerhuts were bona fide purchasers for value pursuant to section 15–39–870 of the South Carolina Code. We disagree.

Pursuant to section 15–39–870,

[u]pon the execution and delivery by the proper officer of the court of a deed for any property sold at a judicial sale under a decree of a court of competent jurisdiction the proceedings under which such sale is made shall be deemed res judicata as to any and all bona fide purchasers for value without notice, notwithstanding such sale may not subsequently be confirmed by the court.

S.C.Code Ann. § 15–39–870 (2005). "The rationale for the statute is the well-established public policy of protecting good faith purchasers and upholding the finality of a judicial sale." *Robinson v. Estate of Harris,* 378 S.C. 140, 144–45, 662 S.E.2d 420, 422 (Ct.App.2008) *aff'd,* 390 S.C. 272, 701 S.E.2d 740 (2010), (citing *Cumbie v. Newberry,* 251 S.C. 33, 37, 159 S.E.2d 915, 917 (1968) (stating "a sound public policy requires the validity of judicial sales be upheld, if in reason and justice it can be done"); *Wooten v. Seanch,* 187 S.C. 219, 222, 196 S.E. 877, 878 (1938) (upholding a foreclosure sale in which the

mortgagee purchased the property sold and further stating that, to set aside a sale, "there must be such irregularity in the proceedings as to show that the sale was not fairly made, or that appellant was defrauded or misled to his injury and loss")).

Here, the master relied on *Robinson* in finding the Fingerhuts were bona fide purchasers for value. In *Robinson*, the defaulting owner of the subject property sought to vacate the foreclosure sale due to ineffective service. 378 S.C. at 143, 662 S.E.2d at 421. This court noted the bona fide purchaser submitted documents from the court file demonstrating (1) service was made upon defendants; (2) both defendants were in default; (3) the attorneys of record were notified of the hearing; and (4) neither defendants were in the United States military service. *Id.* at 145, 662 S.E.2d at 423. The court further noted the purchaser had satisfied all of the elements to be considered a bona fide purchaser for value: (1) actual payment of the purchase price of the property, (2) acquisition of legal title to the property, or the best right to it, and (3) a bona fide purchase, "i.e., in good faith and with integrity of dealing, without notice of a lien or defect." *Id.* at 146, 662 S.E.2d at 423.

Relying on *Cumbie*, Appellants argue the foreclosure sale should be set aside because the Fingerhuts were not bona fide purchasers for value. In *Cumbie*, our supreme court held:

A sound public policy requires that the validity of judicial sales be upheld, if in reason and justice it can be done. In the furtherance of this principle, our decisions have applied the general rule, applicable here, that a purchaser in good faith at a judicial sale is not affected by irregularities in the proceedings or even error in the judgment, under which the sale is made; but is required at his peril only to make inquiry as to the jurisdiction of the court which ordered the sale, and whether all proper parties were before the court when the order was made.

251 S.C. at 37, 159 S.E.2d at 917. Appellants contend the Fingerhuts failed to (1) properly inquire as to the jurisdiction of the court that ordered the foreclosure sale and (2) properly and sufficiently inquire as to whether all parties were properly before the court when the order was made. Additionally, Appellants argue the order of publication did not comply with

the publication requirements of section 15–9–740 of the South Carolina Code. Pursuant to section 15–9–740,

> [t]he order of publication shall direct the publication to be made in one newspaper, to be designated by the officer before whom the application is made, most likely to give notice to the person to be served and for such length of time as may be deemed reasonable not less than once a week for three weeks. The court, judge, clerk, master or judge of probate shall also direct that a copy of the summons be forthwith deposited in the post office directed to the person to be served at his place of residence, unless it appears that such residence is neither known to the party making the application nor can, with reasonable diligence, be ascertained by him.

S.C.Code Ann. § 15–9–740 (Supp.2013). Appellants assert it is unreasonable to expect a newspaper in Beaufort County to be the newspaper most likely to give notice to the Appellants, who reside in Pennsylvania. Appellants further assert the Association's failure to properly serve the summons and complaint violated Appellants' due process rights.

The Fingerhuts contend the purchaser (1) is deemed to be on notice of documents contained in the court's file and (2) takes title to the property without notice of lien or defect. Citing *Gladden v. Chapman*, 106 S.C. 486, 91 S.E. 796, 797 (1917), they argue the foreclosure purchaser is entitled to a presumption that the court considered and properly adjudicated issues of service. In *Gladden*, our supreme court held:

> It must be presumed from the judgment rendered that the Court considered and adjudicated the regularity and sufficiency of each and every step in the proceedings leading up to it, including the sufficiency of the complaint, the issuance and service of process upon the defendants, and the rights and interests of the parties to the action under the allegations and evidence; and although the conclusions with respect to those matters, or any of them, might have been erroneous, so that they would have been reversed on appeal, they do not make the judgment void collaterally.

*Id.*

We find the master did not abuse his discretion in determining the Fingerhuts were bona fide purchasers. At the time of the foreclosure sale, the court file reflected Appellants had

been served, were in default, had received notice, and were not in the military. Furthermore, the Fingerhuts made actual payment of the purchase price at the foreclosure sale and acquired title through the master-in-equity deed. Finally, the Fingerhuts had no notice of any title defect or other adverse claim, lien, or interest in the Property.

While Appellants assert the master lacked jurisdiction to sell the Property because of defects in service, the *Robinson* court held the foreclosure purchaser was a bona fide purchaser for value without notice such that claims of defective service in the foreclosure action did not affect purchaser's title. 378 S.C. at 147, 662 S.E.2d at 423. Although the *Robinson* court found the disputed affidavits of service were not in the record and Appellants' arguments regarding improper publication were not preserved, the court held:

> Moreover, there is no evidence . . . [the foreclosure purchaser] . . . had notice, constructive or otherwise, of Appellants' claims that [the property owners] . . . were . . . not properly served in the foreclosure action. Pursuant to section 15–39–870, then, we hold [the foreclosure purchaser]'s title is not affected by Appellants' claims of defective service of process in the foreclosure action.

*Id.* at 146–47, 662 S.E.2d at 423. Thus, the Robinson court found foreclosure proceedings were res judicata as to bona fide purchasers without notice of defective service claims.

Here, as in *Robinson*, there is no evidence the Fingerhuts had any notice of Appellants' claims they were not properly served. Thus, the Fingerhuts were bona fide purchasers and their title to the Property was not affected by Appellants' claims of defective service of process in the foreclosure action. In light of our finding the Fingerhuts were bona fide purchasers without notice, we need not address Appellants' argument regarding improper service. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate court need not address remaining issues when disposition of prior issue is dispositive).

## II. Foreclosure Sales Price

■ Appellants argue the master erred in failing to set aside the foreclosure sale because the foreclosure sales price shocks the conscience. We disagree.

■ "A judicial sale will be set aside when either: (1) the sale price 'is so gross as to shock the conscience[;]' or (2) the sale 'is accompanied by other circumstances warranting the interference of the court.'" *Wells Fargo Bank, NA v. Turner,* 378 S.C. 147, 150, 662 S.E.2d 424, 425 (Ct.App.2008) (alteration by court) (quoting *Poole v. Jefferson Standard Life Ins. Co.,* 174 S.C. 150, 157, 177 S.E. 24, 27 (1934)). "South Carolina has not established a bright line rule for what percentage the sale value must be with respect to the actual value in order to shock the conscience of the court." *E. Sav. Bank, FSB v. Sanders,* 373 S.C. 349, 359, 644 S.E.2d 802, 807 (Ct.App.2007). "However, a search of South Carolina jurisprudence reveals only when judicial sales are for less than ten percent of a property's actual value, have our courts consistently held the discrepancy to shock conscience of the court." *Id.*

Appellants purchased the Property in 2001 for $201,500. The Fingerhuts subsequently purchased the Property for $11,593.20 at the foreclosure sale in 2012. Appellants submitted an appraisal (Appellants' Appraisal) to the master which set the Property's value at $140,000. This appraisal stated its intended use was to rebut the foreclosure sales price. The master found the Appellants' Appraisal used non-comparable sales data from oceanfront lots and only cited Multiple Listing Service listing data for interior lots as support for the valuation conclusion.

In contrast, the Fingerhuts produced evidence showing the Property was sold for $10,000 in the 2010 Beaufort County Delinquent Tax Auction.[2] Additionally, the Fingerhuts submitted an appraisal (Fingerhuts' Appraisal) stating the Property was valued at $17,000 as of January 19, 2012. The master found the Fingerhuts' Appraisal used comparable sales data, not listing data, from interior lots. The master noted the Fingerhuts' Appraisal was supported by an affidavit submitted by David Fingerhut affirming that the appraisal was ordered for the purpose of obtaining title insurance and not to support the value for purposes of this action.

In denying Appellants' motion to vacate the judicial sale, the master found the Property would have to be worth more than $115,930 for the foreclosure sales price to be less than 10% of

---

2. The Property was subsequently redeemed by Appellants.

the actual value. The master concluded the Fingerhuts' Appraisal and the 2010 tax sale data were more reliable than the valuation information provided by the Appellants. The master held the actual value of the Property was far less than the $115,932 required to shock the conscience of the court.

We find the master did not abuse his discretion in determining the foreclosure sales price of the Property did not shock the conscience of the court. First, the master applied the correct legal standard in making his determination. The master noted that our courts have consistently held that when foreclosure sales prices amount to less than ten percent of the actual value of the property, the discrepancy shocks the conscience of the court. Furthermore, the master's decision is supported by the evidence in the record. The master considered all of the evidence presented, including both appraisals, and found the evidence provided by the Fingerhuts was more reliable.

## CONCLUSION

We find the master did not err in denying Appellants' motion to vacate/set aside a foreclosure sale.

**AFFIRMED.**

WILLIAMS and KONDUROS, JJ., concur.