799 S.E.2d 310

**BELLE HALL PLANTATION HOMEOWNER'S ASSOCIATION, INC., Plaintiff,**

v.

**John A. MURRAY, Trustee of John E. Murray & Gloria C. Murray Family Trust, Respondent,**

and

**David Conor Keys & Karen Keys, Appellants.**

Appellate Case No. 2014-002018
Opinion No. 5467

Court of Appeals of South Carolina.

Heard December 7, 2016
Filed February 8, 2017
Rehearing Denied May 26, 2017

606

608

David Conor Keys, of Charleston, for Appellants.

Amanda Megan Reece, of Reece Law Firm, LLC, of Mount Pleasant, for Respondent.

LOCKEMY, C.J.:

In this foreclosure action, D. Conor Keys and Karen Keys (the Keys) allege the Master-in-Equity erred by vacating a foreclosure sale, denying their motion to stay the order vacating the sale, and denying their motion to strike affidavits presented to the master. We affirm.

## FACTS

On July 22, 2013, Belle Hall Plantation Homeowners Association (Belle Hall) filed a complaint for foreclosure of its lien on property located at 378 Jardinere Walk in Mount Pleasant, South Carolina. The property, originally bought by John E. Murray and Gloria C. Murray, was transferred to John A. Murray as Trustee for the John E. Murray and Gloria C. Murray Family Trust.[1] The complaint alleged John A. Murray (Murray) failed to pay assessments to Belle Hall and owed $1590.31 in principal, late fees, and interest.

Belle Hall attempted to serve Murray with notice of the suit at three different addresses, two of which were nursing

---

1. John A. Murray is the son of John E. Murray.

homes, but was unsuccessful. Belle Hall filed an Affidavit for Order of Publication on September 30, 2013. Accompanying the affidavit were four documents. The first was a Westlaw search for John E. Murray. That document showed five separate addresses for John E. Murray. The remaining pages showed Belle Hall attempted service at the first three addresses but was unable to effect service. On October 4, 2013, the Charleston County Clerk of Court issued an Order for Service Via Publication. In its order, the clerk of court stated, "the Defendant, Murray, Trustee of John E. Murray and Gloria C. Murray Family Trust, on whom service of the Summons and Complaint is to be made cannot, after due diligence, be found in this State. . . ." The order provided that service could be effected by publication in the *Moultrie News*.[2] Belle Hall published the notice as required.

Murray failed to file a responsive pleading and Belle Hall filed an affidavit of default. The case was then referred to the Master-in-Equity for Charleston County for a hearing. The master held a final hearing on March 18 and filed an order foreclosing Belle Hall's lien and ordering the property sold to pay the lien on April 8, 2014. On March 26, 2014, the tenants staying at the 378 Jardinere Walk property left Murray a letter at his home giving him notice of the final hearing. That same day, Murray attempted to contact counsel for Belle Hall by telephone and email, offering to pay any money owed. He never received a response and retained an attorney on May 9, 2014. Murray's counsel checked the court's docket, which reflected the house was not to be sold before May 20, 2014.

The master sold the property to the Keys for $100,000 on May 6, 2014.[3] Pursuant to the master's order, the Keys paid the required deposit and had twenty days to pay the remainder of their bid.

On May 15, 2014, Murray served a motion to vacate the entry of default and set aside the sale. Also on May 15, Murray's counsel called an area attorney to discuss "a host of legal developments and caselaw." During that conversation,

---

**2.** The *Moultrie News* is a newspaper of general circulation in Charleston County.

**3.** Neither party could provide a reason the master sold the property before the date provided in the court's docket.

Murray's counsel described his case to the other attorney. The attorney then asked Murray's counsel if the case involved Belle Hall. The attorney notified Murray's counsel that the winning bidder at the master's sale worked as an attorney in her office. The two did not discuss the case any further.

On May 16, 2014, the Keys paid the remaining balance of their bid amount. That same day, the master issued a deed to the Keys conveying the property. The Keys presented the deed to the Register of Mesne Conveyances on May 23, 2014, and the Register recorded the deed.

The master held a hearing on Murray's motion to vacate on July 3, 2014. Murray argued the judgment should be vacated pursuant to Rule 60(b), SCRCP,[4] and "there was an [a]ffidavit of [s]ervice that was a misrepresentation to the [c]ourt. And that misrepresentation to the court we would argue is fatal." Murray presented the master an affidavit he prepared detailing the issues with service and an affidavit from Peter Tecklenburg, the Charleston County Auditor, which detailed that the property tax records indicated the property tax bill for the property was sent to Murray at his home address.

Belle Hall argued it searched the Charleston County property records website and the mailing address it showed was 3100 Tradition Lane, a location at which Belle Hall attempted service. Belle Hall also argued that in order to vacate the foreclosure sale, Murray must prove something more than misrepresentation—he must prove fraud. Belle Hall asserted it attempted to find an address to serve Murray but could not find him.

The Keys presented the master with a memorandum in opposition to the motion[5] and argued Murray's motion was untimely under Rule 59(e), SCRCP,[6] and there was insufficient evidence to support Murray's 60(b) motion. The Keys also argued they were bona fide purchasers. Finally, the Keys

---

4. Rule 60(b), SCRCP (providing five grounds for relieving a party from a judgment, order, or proceeding).

5. It appears from the record the Keys did not provide the memorandum to the master or opposing counsel prior to the hearing.

6. Rule 59(e), SCRCP (providing the time for filing a motion pursuant to the rule).

asserted the price they paid for the property was not so grossly inadequate as to shock the conscience, such that the sale should be voided.

The master took the matter under advisement and issued its formal ruling on July 22, 2014. The master's order stated, "The [c]ourt finds that in the interest of equity and for good cause shown that [Murray's] motion be granted." The order then provides an accounting of funds held by the master, disperses those funds accordingly, and voids the master's deed issued to the Keys.

Prior to the master's written order, he notified the parties he would be ruling in favor of Murray. On July 22, 2014, before the master filed its written order, the Keys filed a motion to stay the order vacating the sale and for an order of supersedeas.

On August 1, 2014, the Keys filed a motion pursuant to Rule 59(e) to alter or amend the order vacating the judgment. The Keys again argued they were bona fide purchasers, that Murray did not contest that the Keys were bona fide purchasers, Murray failed to show evidence of extrinsic fraud as required under Rule 60(b)(3), SCRCP, the master used an incorrect standard to vacate the sale, the master had no authority to overrule the Clerk of Court's order of publication, and Murray came to the court with unclean hands because he slept on his rights.

On August 4, 2014, Murray also filed a motion pursuant to Rule 59(e) to alter or amend the master's order. Murray asserted the master should amend its order to make specific findings of fact and conclusions of law.

On August 18, 2014, the master held a hearing on the motions filed by the Keys and Murray. The Keys first argued the Clerk of Court made a finding that Belle Hall acted with due diligence in attempting to serve Murray and the master was without authority to overrule the Clerk of Court absent fraud or collusion. The Keys again argued they were bona fide purchasers. The Keys argued any affidavits produced by Murray at this stage to rebut his bona fide purchaser argument were inappropriate in a 59(e) hearing. During the hearing, the Keys acknowledged they had actual notice of Murray's

intent to file a motion to vacate the sale prior to paying the remaining bid amount.

Murray asserted he did not discover when the Keys paid the balance of their bid until August 7, so any questions about bona fide purchasers should be treated as newly discovered evidence. Murray also argued his 59(e) filing should be considered responsive to the factual allegations in the Keys' 59(e) motion. Murray asserted actual knowledge of his impending motion disqualified the Keys from bona fide purchaser status.

The Keys again argued Murray failed to present any evidence or argument regarding their bona fide purchaser status during the first hearing and should therefore be prohibited from arguing those points during a 59(e) motion. The Keys also asserted the only ground for Murray's motion to vacate was under Rule 60(b)(3) and any other finding was not presented to the court previously.

The master stated, "This [c]ourt has inherent equitable powers and in the interest of justice as to make decisions that impact other people's lives. ... I don't find there was fraud, but I do find there was negligence in the failure to notify Mr. Murray." The master orally granted Murray's motion and requested he prepare a proposed order. The master also denied the Keys' motions to stay the order vacating the sale and to strike the affidavits presented prior to the 59(e) hearing. The master declined to rule on the bona fide purchaser issue.

The master filed its amended order on February 10, 2015. The master included the findings of fact Murray requested in his motion to amend and found Belle Hall's actions in attempting to serve Murray to be grossly negligent. Recognizing the fraud or collusion standard generally required in cases regarding orders of publication, the master found the service process in this case "a 'structural defect in the constitution of the trial, (defying) analysis by harmless error standards.'" Because of the defective service, the master found it lacked personal jurisdiction over Murray; therefore, the judgment of foreclosure was void. The master found it unnecessary to rule on the Keys' assertion they were bona fide purchasers because the original order of foreclosure was void.

The Keys filed a motion to reconsider the master's February 10, 2015 order on February 18, 2015. The Keys asserted: (1) the master erred by including findings of gross negligence, lack of procedural due process, and lack of personal jurisdiction; (2) that the judgement was void pursuant to Rule 60(b)(4); and (3) that Belle Hall violated the publication statute because those issues were not raised during the hearing on the motion to vacate. The Keys also asserted that some facts were contested. The Keys averred Murray failed to show there was fraud, collusion, or a facially defective affidavit in order to overrule the Clerk of Court's order of publication. The Keys again argued they were bona fide purchasers and cited to this court's decision in *Bloody Point Property Owner's Ass'n, v. Ashton*, 410 S.C. 62, 762 S.E.2d 729 (Ct. App. 2014) for the proposition that the master should make a ruling on their status as bona fide purchasers regardless of the master's decision on vacating the foreclosure order.

The master heard argument on the Keys' motion to reconsider on April 9, 2015. The Keys again acknowledged they had notice of Murray's intent to file a motion to vacate prior to paying the balance of their bid, but they argued "there is a distinction between ... a defect in the procedure of a civil action versus a defect in title." Murray asserted the Keys did not have legal title prior to getting notice about the adverse claim and were therefore not bona fide purchasers. The Keys responded that the relevant date was May 6, 2014, when the gavel for the judicial sale fell, and at that time, they had no notice of adverse claims.

The master denied the Key's motion, finding the Keys actually paid the purchase price and acquired legal title to the property through the master's Deed. However, the master found the Keys did not acquire the deed in good faith and with integrity of dealing without notice of a lien or defect. The master filed its written order to that effect on April 9, 2015. This appeal followed.

## STANDARD OF REVIEW

"The appellate court's standard of review in equitable matters is our own view of the preponderance of the evidence." *Horry Cty. v. Ray*, 382 S.C. 76, 80, 674 S.E.2d 519, 522 (Ct. App. 2009).

## LAW/ANALYSIS

### a) Vacating Foreclosure Sale

"The determination of whether to set aside a foreclosure sale is a matter within the discretion of the trial court." *Bloody Point*, 410 S.C. at 66, 762 S.E.2d at 731. "An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions." *Id.* (quoting *Carson v. CSX Transp., Inc.*, 400 S.C. 221, 229, 734 S.E.2d 148, 152 (2012)). "[T]he inartful use of an abuse of discretion deferential standard of review merely represents the appellate courts' effort to incorporate the two sound principles underlying the proper review of an equity case." *Crossland v. Crossland*, 408 S.C. 443, 452, 759 S.E.2d 419, 423–24 (2014) (quoting *Lewis v. Lewis*, 392 S.C. 381, 391, 709 S.E.2d 650, 655 (2011)). "[T]hose two principles are the superior position of the [master] to determine credibility and the imposition of a burden on an appellant to satisfy the appellate court that the preponderance of the evidence is against the finding of the [master]." *Id.* at 452, 759 S.E.2d at 424 (quoting *Lewis*, 392 S.C. at 391, 709 S.E.2d at 655).

### 1. Order of Publication

The Keys argue Murray failed to present evidence of fraud or collusion; therefore, the master had no authority to overrule the Clerk of Court's order of publication. We disagree.

The clerk of court may order a person to be served by publication when

> the person on whom the service of the summons is to be made cannot, after due diligence, be found within the [s]tate and (a) that fact appears by affidavit to the satisfaction of the ... clerk of the court of common pleas ... of the county in which the cause is pending and (b) it in like manner appears that a cause of action exists against the defendant in respect to whom the service is to be made ... [the] clerk ... may grant an order that the service be made by the publication of the summons....

S.C. Code Ann. § 15–9–710 (2005).

Generally, "[w]hen the issuing officer is satisfied by the affidavit, his decision to order service by publication is final

absent fraud or collusion." *Wachovia Bank of S.C., N.A. v. Player*, 341 S.C. 424, 429, 535 S.E.2d 128, 130 (2000). However, this court in *Caldwell v. Wiquist* found affidavits requesting service by publication that are facially defective and do not comply with the publication statute will not be sustained even in the absence of fraud or collusion. 402 S.C. 565, 571–72, 741 S.E.2d 583, 586–87 (Ct. App. 2013). In *Caldwell*, this court distinguished the affidavits in *Player* and previous cases by noting the affidavit at issue in *Caldwell* only established the plaintiff attempted service on the defendant in Beaufort County, not in the State of South Carolina. *Id.* at 571, 741 S.E.2d at 586–87. Because the affidavit failed to comply with the publication statute, the court of appeals reversed the circuit court's order denying appellant's motion to set aside the default judgment. *Id.* at 577, 741 S.E.2d at 590.

This case is similar to *Caldwell* because the affidavit presented to the Clerk of Court was facially defective. The affidavit filed by Belle Hall states, "After due diligence, as demonstrated by the attached Exhibit A which is incorporated herein by reference, Plaintiff's counsel has been unable to ascertain the location of Defendant, John A. Murray...." However, the search attached to the affidavit as Exhibit A reflects Belle Hall attempted to locate John E. Murray. As evidenced by its own affidavit, Belle Hall failed to comply with the publication statute because the attached search demonstrates it attempted service on the wrong defendant. *See* § 15–9–710 (noting one requirement for service by publication is that it "appears that a cause of action exists against the *defendant in respect to whom the service is to be made*" (emphasis added)); *Caldwell*, 402 S.C. at 572, 741 S.E.2d at 587 ("South Carolina courts have repeatedly required strict compliance with publication statutes.").

Accordingly, we find the master had the authority to overrule the Clerk of Court's order of publication because Belle Hall failed to comply with the publication statute. *See* § 15–9–710 (providing for service by publication if "the person on whom the service of the summons is to be made cannot, after due diligence, be found within the [s]tate").

## 2. Rule 60(b)(4)

█ The Keys also assert this court's decision in *Universal Benefits, Inc. v. McKinney*, 349 S.C. 179, 561 S.E.2d 659 (Ct.

App. 2002), precludes the master from vacating the sale under Rule 60(b)(4) in this case.[7] We disagree.

 "Whether to grant or deny a motion under Rule 60(b) lies within the sound discretion of the [master]." *Raby Constr., L.L.P. v. Orr*, 358 S.C. 10, 17, 594 S.E.2d 478, 482 (2004).

Rule 60(b) provides,

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

1) mistake, inadvertence, surprise, or excusable neglect;
2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
3) fraud, misrepresentation, or other misconduct of an adverse party;
4) the judgment is void;
5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

 "A void judgment is one that, from its inception, is a complete nullity and is without legal effect." *Universal Benefits*, 349 S.C. at 183, 561 S.E.2d at 661 (quoting *Thomas & Howard Co. v. T.W. Graham & Co.*, 318 S.C. 286, 291, 457 S.E.2d 340, 343 (1995)). "The definition of void under the rule only encompasses judgments from courts which failed to provide proper due process, or judgments from courts which lacked subject matter jurisdiction or personal jurisdiction." *Id.* (quoting *McDaniel v. U.S. Fid. & Guar. Co.*, 324 S.C. 639, 644,

7. The Keys also argue the master erred in vacating the foreclosure sale pursuant to Rule 60(b)(4), SCRCP, because Murray never requested the court do so. During the hearing on the motion to vacate, Murray requested the master set aside the order of foreclosure pursuant to Rule 60(b), SCRCP. We find this request was sufficient for the master to grant relief pursuant to Rule 60(b)(4) under the circumstances of this case. *See Busillo v. City of N. Charleston*, 404 S.C. 604, 608, 745 S.E.2d 142, 145 (Ct. App. 2013) ("It is possible ... that the context of the proceeding may make the specific ground for the objection sufficiently apparent to the trial court....").

478 S.E.2d 868, 871 (Ct. App. 1996)). "Generally, a person against whom a judgment or order is taken without notice may rightly ignore it and may assume that no court will enforce it against his person or property." *Id.*

In *Universal Benefits*, this court affirmed the circuit court's denial of Universal Benefits' motion to set aside an order of dismissal pursuant to Rule 60(b)(4). *Id.* at 181, 561 S.E.2d at 660. Universal sued its former employee to enforce a covenant not to compete. *Id.* Universal failed to attend a roster meeting, and the circuit court dismissed the complaint with prejudice for failure to prosecute. *Id.* at 182, 561 S.E.2d at 661. Universal subsequently filed a Rule 60(b)(4) motion, alleging it had not received notice of the roster meeting and requesting the court set aside the dismissal. *Id.* The circuit court denied Universal's motion. *Id.*

This court found Universal received written notice of the circuit court's order dismissing its case and had the opportunity to timely move for reconsideration. *Id.* at 183, 561 S.E.2d at 661. Because Universal had the ability to file a motion for reconsideration or file a direct appeal but did not, it had sufficient opportunity to be heard and its due process rights were protected. *Id.* at 184, 561 S.E.2d at 662. Accordingly, the court of appeals found the judgment was not void and affirmed the circuit court. *Id.*

We acknowledge Murray had an opportunity to request reconsideration of the order of foreclosure; however, we find the master properly granted Murray's 60(b)(4) motion because the master never had personal jurisdiction over Murray. *See id.* at 183, 561 S.E.2d at 661 ("Generally, a person against whom a judgment or order is taken without notice may rightly ignore it and may assume that no court will enforce it against his person or property."); *id.* ("The definition of void under the rule only encompasses judgments from courts which failed to provide proper due process, or judgments from courts which lacked subject matter jurisdiction or personal jurisdiction." (quoting *McDaniel*, 324 S.C. at 644, 478 S.E.2d at 871)). Accordingly, we affirm the master's decision to vacate the order of foreclosure.

### 3. Laches

The Keys assert Murray failed to pay the homeowners association fees for two years, failed to perform an

adequate title check prior to a transfer of the property in 2013, and failed to adequately respond to stop the foreclosure sale once he received notice of the action. According to the Keys, Murray's request for equitable relief should be precluded by the doctrine of laches. We disagree.

"Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Emery v. Smith*, 361 S.C. 207, 215, 603 S.E.2d 598, 602 (Ct. App. 2004) (quoting *Mid–State Trust, II v. Wright*, 323 S.C. 303, 474 S.E.2d 421 (1996)). "Under the doctrine of laches, if a party, knowing his rights does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights." *Id.* "The party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice." *Id.* "[T]he determination of whether laches has been established is largely within the discretion of the trial court." *Id.* at 216, 603 S.E.2d at 602.

We find Murray's actions were not sufficient to establish a defense of laches. We are troubled by Murray's delay in formally responding to the foreclosure action after receiving notice in late March 2014. However, by May 2014, Murray hired an attorney who filed a motion to vacate the foreclosure judgment. We do not believe this delay was unreasonable; therefore, we find the master did not abuse its discretion in granting Murray equitable relief in the face of the Keys' laches argument.

### b) Bona Fide Purchasers

The Keys argue they are bona fide purchasers because at the time the gavel fell on the judicial sale, they satisfied the three elements to be bona fide purchasers.[8] We disagree.

Section 15–39–870 of the South Carolina Code (2005) provides,

---

8. The Keys assert Murray's arguments opposing their status as bona fide purchasers are not preserved because Murray failed to assert them

> Upon the execution and delivery by the proper officer of the court of a deed for any property sold at a judicial sale under a decree of a court of competent jurisdiction the proceedings under which such sale is made shall be deemed res judicata as to any and all bona fide purchasers for value without notice, notwithstanding such sale may not subsequently be confirmed by the court.

The statute exists because "sound public policy requires that the validity of judicial sales be upheld, if in reason and justice it can be done." *Cumbie v. Newberry*, 251 S.C. 33, 37, 159 S.E.2d 915, 917 (1968).

▅▅▅▅ To qualify as a bona fide purchaser, a party must show "(1) actual payment of the purchase price of the property, (2) acquisition of legal title to the property, or the best right to it, and (3) a bona fide purchase, 'i.e., in good faith and with integrity of dealing, without notice of a lien or defect.'" *Robinson v. Estate of Harris*, 378 S.C. 140, 146, 662 S.E.2d 420, 423 (Ct. App. 2008) (quoting *Spence v. Spence*, 368 S.C. 106, 117, 628 S.E.2d 869, 874–75 (2006)). "In addition, '[t]he bona fide purchaser must show all three conditions—actual payment, acquiring of legal title, and bona fide purchase— occurred before he had notice of a title defect or other adverse claim, lien, or interest in the property.'" *Id.* (quoting *Spence*, 368 S.C. at 117, 628 S.E.2d at 875).

There is no question the Keys paid a portion of their bid to the master and did not know at that time there was any adverse claim against the property. Before the Keys paid the entire purchase price, however, they received actual knowledge that there could be a claim or defect that would affect title to the property.[9]

Accordingly, the Keys cannot claim status as a bona fide purchaser for value. *Robinson*, 378 S.C. at 146, 662 S.E.2d at

---

during the hearing on the motion to vacate the foreclosure sale. We disagree. *See Smith v. NCCI, Inc.*, 369 S.C. 236, 247–48, 631 S.E.2d 268, 274 (Ct. App. 2006) ("When a trial court does not explicitly rule on an argument raised, and the *appellant* makes no Rule 59(e), SCRCP, motion to obtain a ruling, the appellate court may not address the issue." (emphasis added)).

9. The Keys assert the master erred in considering certain affidavits presented during the hearing on the Rule 59(e) motions. The statements

423 ("The bona fide purchaser must show all three conditions—actual payment, acquiring of legal title, and bona fide purchase—occurred before he had notice of a title defect or other adverse claim, lien, or interest in the property." (quoting *Spence*, 368 S.C. at 117, 628 S.E.2d at 875)).

The Keys assert South Carolina bankruptcy decisions indicate the appropriate date to consider in determining bona fide purchaser status is the date of the foreclosure sale. *See, e.g., In re Watts*, 273 B.R. 471 (Bankr. D.S.C. 2000). The court in *Watts* interpreted federal statutes regarding a debtor's right to cure defaults after a foreclosure sale. The *Watts* court found the statute's language to be "clear and unambiguous in establishing the date of the actual foreclosure sale as the cut-off date for curing mortgage defaults." *Id.* at 476. According to the Keys, that same interpretation supports their argument that the applicable date for bona fide purchaser status is the foreclosure sale.

The bankruptcy court's analysis of a federal statute in *Watts* is inapplicable to our determination of the Keys' status as a bona fide purchaser. The South Carolina case law is clear that a purchaser must complete all three requirements prior to notice of a defect to be a bona fide purchaser.[10] Accordingly, the master did not err in finding the Keys were not bona fide purchasers.

## CONCLUSION

For the foregoing reasons, the decision of the master is

**AFFIRMED.**

KONDUROS and MCDONALD, JJ., concur.

---

in the affidavits were cumulative to statements made by the Keys during the hearing; therefore, the Keys have waived their right to argue error on appeal. *Campbell v. Jordan*, 382 S.C. 445, 453–54, 675 S.E.2d 801, 805–06 (Ct. App. 2009) (holding failure to object to cumulative testimony at trial waives the issue on appeal).

10. The Keys also argue the master erred in denying their request for a stay of the July 22, 2014 order vacating the foreclosure sale. Because we affirm the master's order vacating the sale, we decline to reach this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when disposition of prior issues are dispositive).